GUADALUPE McCORMICK ANAYA, ET AL., Plaintiffs and Appellants, *v.* MARÍA McCORMICK WIDOW OF SERRANO, ET AL., Defendants and Appellees.

No. 7044. Argued February 3, 1937.—Decided February 15, 1938.

*L. Muñoz Morales* and *G. Cruzado Silva* for appellants. *C. H. Juliá* and *H. Torres Solá* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

In April 1927, Harry A. McCormick made his last will and testament. After stating that he had no natural children or other lineal descendants or ascendants, he designated as his heirs a brother and certain sisters and nephews or nieces. He conferred upon his executors, named in the will, full and exclusive power to represent the estate in actions instituted by them or brought by others, to enter into agreements of compromise and settlement, and to alienate (*enajenar*) or encumber (*gravar*) property. It was his wish that where-ever no express power was conferred upon his executors for the performance of any given act or the doing of anything, such power should be understood as having been conferred and was conferred for the purpose of carrying out his will. The executors were relieved from the necessity of furnishing any bond to secure the proper performance of their duties, from the necessity of rendering any account of their admin-istration, from the necessity of accounting for any property disposed of by them, and from the inconvenience of any limi-tations upon their actions other than the restrictions set forth in the instrument.

In a notarial instrument executed December 17, 1928, for the purpose of effecting payment of hereditary rights, Doña Dolores Alcaide y Baiz, widow of McCormick, and Antonio S. Alcaide y Baiz (in his capacity as testamentary executor of Harry A. McCormick, deceased) appeared as parties of the first part and Francisco, Sabina and Guadalupe Anaya as parties of the second part. More specifically, the parties stated: that Doña Dolores Alcaide y Baiz appeared as the widow of Harry A. McCormick because of her interest in the liquidation of the conjugal partnership, and as a forced heir of her deceased husband to the extent of the widow's share in usufruct under the law; that Antonio Alcaide y Baiz ap-peared as testamentary executor of Harry McCormick; that Francisco, Sabina and Guadalupe Anaya appeared as the natural children of Harry A. McCormick, convinced that they

had the right to be recognized as such. Next the instrument recites the death of Harry A. McCormick and sets forth in substance the contents of his will, including the powers conferred upon the executors. Then comes the following recital:

"*Third:* That according to an extra-judicial document of November 9, 1927, signed before Notary Luis Muñoz Morales, who resides in this city, affidavit number two thousand one hundred and seventy-seven, Mr. Antonio S. Alcaide, in his capacity of testamentary executor of the deceased Harry A. McCormick, in representation of the estate, promised to deliver to each of the three Anayas the sum of THIRTEEN THOUSAND DOLLARS in cash and SEVENTEEN THOUSAND DOLLARS in shares of the Railroad Company of Puerto Rico, for a nominal value of One Hundred Dollars each one, making a total, for three interested parties, of THIRTY-NINE THOUSAND DOLLARS in cash and FIFTY-ONE THOUSAND DOLLARS in the above mentioned shares; the three Anayas, Guadalupe, Sabina and Francisco, accepting said amount for each one, as a final settlement and liquidation of any right or action which, by any reason or title, they might have in the estate of the deceased Harry A. McCormick, and waiving or surrendering any action which they might bring for that purpose, inasmuch as it is considered that said sum covers the amount of any right which they might obtain. It was stipulated in the same document that said sums would be delivered and paid to the Anaya brother and sisters on the date to be set thereafter by agreement of both parties, and in accordance with the liquidation of the testamentary execution or estate, it being understood that no discount shall be made from said sums, and that they would be paid from the first liquidation to be made."

From the notarial instrument it also appears that, prior to the date thereof, Sabina and Guadalupe Anaya had disposed of a part of what they were to receive under the written agreement of November 9, 1927. After express ratification of that agreement by Doña Dolores Alcaide y Baiz and modification thereof, by substituting for a part of the cash payment originally agreed upon, certain real estate, notes and corporate stock, and after deducting the amounts previously assigned by Sabina and Guadalupe Anaya, the executor and Doña Dolores Alcaide allotted, transferred and delivered to

Francisco, Sabina and Guadalupe Anaya, a parcel of real estate known as Malezosas and other property, which together with a cash payment of $15,000 amounted in the aggregate to $90,000. Francisco, Sabina and Guadalupe Anaya formally accepted this amount in full payment and satisfaction of all rights which they had or might have in the estate of Harry A. McCormick and agreed not to contest the will in any way. Doña Dolores and Antonio S. Alcaide agreed to execute and to see to the execution of whatever ratifications, notarial instruments and documents that might be necessary in order that Francisco, Sabina and Guadalupe Anaya should inscribe in the registry of property the parcel of land Malezosas allotted to them. The document of November 9, 1927, is not before us.

The executors designated in the will were also named as commissioners with full powers for partition and distribution of the estate. In December 1929, the testamentary heirs, with the exception of one or two who had died in the meantime, and the successors in interest of those who had died, brought an action against the executors and commissioners for a division and distribution of the estate. The executors and commissioners answered, admitting most of the facts subject to certain explanatory statements and corrections and affirmative averments. Plaintiffs in turn admitted the facts set forth in the answer and moved for a judgment. The district judge, after setting forth in full the powers conferred upon the executors and commissioners by the testator, and after deducting the amount paid by the executors to the natural children, and other items, found that there remained in the hands of the executors and commissioners some $65,000 in money and property to be distributed among plaintiffs. He then indicated in detail the manner in which this remainder should be distributed and ordered execution of the corresponding instrument and the entry of a judgment in accordance with his finding. Judgment was entered accord-

ingly February 15, 1930, and a notarial instrument in accordance with the terms thereof was executed February 28th by one of the executors and plaintiffs in the case just mentioned. By the terms of this instrument a partition of the remainder of the estate valued at some $65,000 was effected in strict accordance with the findings and judgment, including the deduction of money and property to the amount of $90,000 previously allotted and delivered to the natural children.

In April, 1930, Guadalupe, Sabina and Francisco Anaya, plaintiffs in a filiation suit, were adjudged to be the natural acknowledged children of Harry A. McCormick with the right to use the name McCormick and to inherit as the forced heirs of their father in the manner and proportion provided by the Civil Code.

In May, 1931, Guadalupe, Sabina and Francisco McCormick Anaya brought the present action in which they prayed for a judgment to the effect that the designation of heirs contained in the will was a nullity, without prejudice to valid devises and bequests; that as a result of such nullity Harry A. McCormick died intestate and his property should pass according to the rules of legitimate succession, except as to valid legacies; that plaintiffs, Guadalupe, Sabina and Francisco McCormick y Anaya, are the sole universal intestate heirs to the whole of the property left by their father, Harry A. McCormick, except the part belonging to the widow in usufruct and the valid legacies; that plaintiffs should have and recover from defendants the real property and real property rights described in the complaint and all other property and things of value of whatsoever kind included in the Mc Cormick estate, with costs, disbursements and attorneys' fees. The district judge, after a trial on the merits, held that plaintiffs were estopped by reason of the contract of compromise and settlement and by reason of having accepted and received the benefits accruing to them under that con-

tract. Incidentally he said *arguendo* that plaintiffs had received all that they were entitled to receive. He then dismissed the action.

The first four assignments are, in substance, that the district court erred in ignoring the facts that plaintiffs were forced heirs, that the forced heirs were preteritted in the will, that the omission of these forced heirs invalidated the designation of heirs and opened the way to intestate succession, and in holding that plaintiffs had received all that they were entitled to by way of inheritance.

The brief for appellants fails to satisfy us that the errors here complained of, if they were committed by the district judge, would justify a reversal unless the judge also erred as claimed in the fifth assignment.

██ The fifth assignment is that the district court erred in holding that plaintiffs were estopped by their acceptance of the compromise agreement.

The gist of the argument follows; the real consideration for the promise to pay a certain amount, contained in the agreement of November 9, 1927, was an impending filiation suit, and the agreement was therefore void as against public policy (Section 1227, Civil Code); the real consideration for the ratification of the previous agreement and for the payment of $90,000 in accordance with the terms of the notarial instrument executed December 17, 1928,—some eight months after the filing of the filiation suit—was the renouncement or abandonment of the filiation suit, that is to say, of the civil status of the Anayas (Section 1713 Civil Code); the instrument of December, 1928, was not a liquidation of inheritance and allotment to the omitted heirs of their portion of the inheritance (2 Morell y Terry 443; Rulings of the General Directorate of October 30, 1896; May 30, 1898; and June 30, 1910); the designated heirs were not parties to the instrument nor were they heirs by force of law; there was no agreement between the designated heirs and the forced heirs; the fact that the designated heirs were not also forced heirs

would have sufficed to vitiate the agreement; in order to effect a valid partition, it was necessary that the portion belonging to the forced heirs should have been delivered or allotted to them upon the basis of a void designation of heirs; if the designated heirs were forced heirs they would have an indubitable right to the inheritance as intestate heirs even though the designation were set aside; on admission of the omitted heirs, the only difference would be as to the proportionate part of the inheritance which would pass to the designated heirs, not as to their hereditary right; if the designated heirs are not forced heirs, they ceased to be designated heirs on annulment of the designation and they are not intestate heirs; the law supersedes the will of the testator and the omitted heirs remain as the only lawful heirs; the contents of the instrument disclose the object or subject matter of the compromise, not as the right of creditors nor as a right of usufruct, but as the hereditary right of one of the parties to the property, a part of the inheritance, which was delivered; the general rules governing agreements of compromises should be subordinate to the special rules which govern in the matter of succession, hereditary rights, and partition of the inheritance; the agreement of November 9, 1927, if alone considered, was an agreement without consideration or else an agreement based upon an illicit consideration; the instrument of December 17, 1928, if considered in connection with the previous agreement—which was without consideration—was a ratification of that agreement; if the instrument of December 17, 1928, be separately considered it may be regarded either as the partition of an inheritance and a renouncement of hereditary rights or as an ordinary compromise; contracts ''Without consideration or with an illicit one have no effect whatever'' (Section 1227 Civil Code); the agreements of November 9, 1927, and of December 17, 1928, were void for want of consideration; if there was a consideration it was void and against public policy (*Antongiorgi* v. *Antongiorgi,* 28 P.R.R. 815; *Pagán* v. *Succn.*

*of Padilla,* 42 P.R.R. 941) if the consideration for the contract of December 17, 1928, involved only the hereditary right of natural children, the question remains as to whether the transaction was a partition of the inheritance or a compromise of hereditary rights; if it was a partition it was not legally effected because all of those interested in the inheritance were not parties and because the partition was not made by the commissioners (Sections 1018 of the Civil Code *et seq.*) if it was merely a compromise of hereditary rights, the compromise was ineffective because the testamentary heirs were not parties (*Muñoz* v. *Reg.,* 41 P.R.R. 672) the complaint states two causes of action, first—as to the nullity of the will with reference to which plaintiff allege that they are forced heirs of the testator and were pretermitted in the will and demand, in accordance with Section 742 of the Civil Code, a declaration as to the nullity of the designation of heirs, and, second—another cause of action as to a declaration of heirship with reference to which, by reason of the facts alleged as a first cause of action and as a result of the pronouncement concerning the invalidity of the will, plaintiffs demand an opening of the intestate succession and the declaration that plaintiffs are the only intestate heirs and are entitled to the whole of the inheritance; as to the first cause of action, we must consider whether the agreement of 1928, interposed by defendants as a defense, implies a compromise involving plaintiffs' civil status as acknowledged natural children, which is the basis of this action; if it was a compromise concerning the civil status of plaintiffs and a settlement of the filiation suit, the consideration was illicit and there was no estoppel; if the compromise did not involve the civil status of plaintiffs, they could continue the prosecution of their filiation suit to judgment; the judgment of April 10, 1930, upon either hypothesis, subsists as valid and effective in all its parts and plaintiffs are the forced heirs of their father; the prayer for relief, based on the first cause of action, is not affected by the agreement of December 17,

1928, if that agreement is a mere compromise affecting hereditary rights; with or without an agreement concerning property, with or without participation in the inheritance, with or without property to be distributed, the character and right are absolute and independent of the hereditary property, affecting the other rights and representation of the author (Sections 599 to 610 of the Civil Code) whether the agreement of December 17, 1928, be valid or not and whatever the scope thereof may be relative to the property received by plaintiffs, it is no obstacle to the first cause of action set up by plaintiffs as pretermitted forced heirs as a basis for their prayer as to the nullity of the designation of heirs; as to the second cause of action concerning a declaration of heirship, plaintiffs rely on the fact that in the absence of other ascendants or descendants, and the designation of heirship being a nullity, they are the only forced heirs; there was no plea of estoppel as to the second cause of action and no reason why judgment should not have been rendered for plaintiffs; the only difference between the instant case and the decision of the Supreme Court of Spain of June 17, 1908 (111 Jurisprudencia Civil 495) is that in the latter the father, during his lifetime, delivered to his natural daughter a certain amount in anticipation of her legitimate portion, in consideration of which she executed a waiver of her right and acknowledgment of payment, while in the instant case, the amount was delivered to plaintiffs by an executor in consideration of an acknowledgment of payment and waiver. See also Judgment of the Supreme Court of Spain rendered February 27, 1909, 113 Jurisprudencia Civil 720, cited by appellants.

The only difference between the instant case and the case decided by the Supreme Court of Spain June 17, 1908, is an important difference. Section 744 of the Civil Code (1930 ed.) expressly provides that: (Italics ours.)

"All renunciations or compromises with regard to a *future legal portion between the persons owing it* and *their* heirs by force of law

are void, and the *latter* may claim it *upon the death of the former.*" (Italics supplied.)

This prohibition places no limitation whatever on the power of the forced heirs to renounce or dispose of their inheritance as they may see fit after the death of the persons from whom they inherit, either by compromise and settlement with testamentary heirs or otherwise. Nor was the compromise and settlement in the instant case contrary to any other statutory provision that has been brought to our attention unless it be Section 1713 of the Civil Code (1930 ed.).

In *Ex parte Santiago et al. & The People,* 21 P.R.R. 359, this court construed Section 1713 of the Civil Code, adopted the construction placed by Manresa on the corresponding Sections of the Spanish Civil Code and pointed out the distinction between a civil status and (21 P.R.R. 365) "the economic consequences or pecuniary interest arising or originating from the civil status claimed, such, for example, as the rights which a natural child, whose action is pending before the court, may have in the estate of his father." In the Santiago case, plaintiffs, most of whom were minors, and defendants, one of whom was a minor, had entered into a compromise whereby plaintiffs received but little more than half of what they might have received if their status as acknowledged natural children had been definitely established at the time by final judgments in the various filiation suits. This court sustained the compromise. In the instant case, plaintiffs received something less than two-thirds of what they might have received, according to their own figures, if at the time of the compromise agreement their civil status had been definitely established. To say that none of the defendants was a forced heir is not enough to distinguish the instant case from that of *Ex parte Santiago et al & The People.* If Francisco, Sabina and Guadalupe Anaya could have entered into a valid and binding compromise agreement with a forced heir or with forced heirs, we see no reason why they

could not enter into an equally valid and binding compromise agreement with the brothers and sisters, nephews, and nieces, designated by McCormick as his sole and universal heirs.

 Looking backward from the standpoint of the final judgment in the filiation suit, it may be conceded that the Anayas were the acknowledged natural children of Harry McCormick. Viewing the matter from the standpoint of the respective parties to the compromise agreement at the time thereof, perhaps it would be more accurate to say that the Anayas—as far as any hypothetical basis for such an agreement was concerned—either were or were not the acknowledged natural children of McCormick. The Anayas presumably had in their possession the letters and photographs subsequently introduced in evidence at the trial of the filiation suit. Perhaps they also had the opinion of a handwriting expert who subsequently testified at that trial. They probably knew more or less what the testimony of other witnesses would be. The designated heirs had in their favor the designation of heirship and the positive statement of the testator in his will that he had no natural children and no descendants or ascendants. Both parties must have known that irrespective of what the actual civil status of the Anayas was or might be, they could not obtain a judicial determination as to the nullity of the designation of heirship unless and until, either in an action brought for that purpose or in a separate filiation suit, they should first establish the fact of such civil status. Without a judicial declaration that the designation of heirs was a nullity, they could not enforce their claim as intestate heirs. Their only hope of coming into immediate possession of any part of the inheritance lay in the possibility of a compromise agreement. The outcome of a filiation suit under the stringent rule established by this Court in the earlier cases as to the necessity for "strong and convincing proof", considered in connection with the testator's positive statement that he had no natural children, was

necessarily doubtful. Hence the Anayas had good reason to consider whether "a bird in the hand" was not "worth two in the bush." The designated heirs; on the other hand, could not be sure that the Anayas would not succeed in the contemplated filiation suit in which event the nullity of the will, as far as the designation of heirs was concerned, would become an established fact. Hence they reasoned, no doubt, that something less than "half a loaf" was "better than no loaf at all." The promise to pay $90,000, and the subsequent payment in money and property was a good and sufficient consideration for the acceptance thereof by the Anayas in full payment and satisfaction of whatever right they might have had in the estate of Harry McCormick, for the renouncement of any cause of action to enforce such right and for their promise not to attack the will. The renouncement by the Anayas of their hereditary rights and of any cause of action which they might have had to enforce such rights, and their promise not to attack the will was a good and sufficient consideration for the payment of $90,000. See also *Matienzo* v. *González*, 26 P.R.R. 400; 12 C.J. 322–327, Sections 16, 17 and 18.

▮ By the judgment in the filiation suit, Francisco, Sabina and Guadalupe Anaya were adjudged to be the acknowledged natural children of Harry A. McCormick with the right to use the name McCormick and to inherit from him as forced heirs in the manner and proportion provided by the Civil Code. Whether or not the judgment in the filiation suit was *res judicata* as to the defense of compromise and settlement interposed apparently for the first time by defendants in the present action is a question that does not appear to have been definitely raised in the district court and has not been definitely raised by appellants in this Court.

▮ The testamentary heirs ratified and confirmed the agreement of compromise and settlement when they accepted and distributed among themselves what was left of the estate after deducting from the total value thereof the $90,000 paid

to the natural children in accordance with the terms of the compromise agreement. This ratification of the compromise agreement eliminates any question as to whether the testamentary heirs were parties to, or in the absence of such ratification would have been bound by, that agreement.

The foregoing conclusions relieve us from the necessity of considering the sixth and seventh assignments to the effect that the district court erred in holding that the annulment of certain contracts, set up by way of defense, and the setting aside of the judgment rendered in the action brought by the testamentary heirs against the executors were conditions precedent to the bringing of the present action, and in not mentioning or deciding other questions raised by defendants herein.

We find no abuse of discretion in the award of costs.

The judgment appealed from will be affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.